UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KHANAY YANCEY,

       Plaintiff,

  v.

GREGORY TILLMAN and
CLAYTON COUNTY, GEORGIA,

       Defendants.

CIVIL ACTION NO.
1:20-CV-03269-JPB

## ORDER

This matter comes before the Court on Gregory Tillman's Motion to Dismiss

[Doc. 50] and Clayton County's Motion to Dismiss [Doc. 53] Khanay Yancey's

("Plaintiff") Amended Complaint.  This Court finds as follows:

## BACKGROUND

**A.**    **Factual History**

Plaintiff is a resident of Clayton County, Georgia.  [Doc. 44, p. 4].

Beginning on July 4, 2019, Plaintiff allowed a friend, the friend's daughter and the

friend's boyfriend, Kevin Clark, to stay at Plaintiff's residence following the

friend's eviction.  Id. at 6.  At some point thereafter, Plaintiff did not feel safe with

Clark in her home and asked him to leave.  Id.  Clark left on July 14, 2019.  Id.

On July 15, 2019, Clark arrived unannounced at Plaintiff's residence and attempted to enter her home, although Plaintiff did not allow Clark to come inside. Id. at 6–7.  Clark called 911 and reported that Plaintiff was denying him access to retrieve his personal belongings.  Id. at 7.  Gregory Tillman ("Defendant Tillman"), an officer with the Clayton County Police Department ("CCPD"), responded to the 911 call and arrived at Plaintiff's home around 1:25 PM.  Id. Clark informed Defendant Tillman that he left a remote control, a TV stand and other small items inside Plaintiff's residence.  Id.

Defendant Tillman then knocked on Plaintiff's door.  Id.  Plaintiff opened the door and informed Defendant Tillman that Clark previously removed his belongings and that Clark was not welcome in her home.  Id.  Within two minutes of his arrival, Defendant Tillman raised his hand, shouted at Plaintiff to "STOP" and purportedly threatened Plaintiff, saying "if you're not going to listen, I'm just going to do what I need to do."  Id.  Plaintiff asked her son, who was home at the time, to contact CCPD and request that a supervisor report to her residence.  Id. Plaintiff again explained to Defendant Tillman that Clark had been a guest in her home and was not a lawful resident.  Id. at 8.  Plaintiff contacted CCPD to request a supervisor, but Defendant Tillman "repeatedly refused" to provide her with his

name and badge number.  Id. at 7.  Dispatch advised Plaintiff that a supervisor was en route to her home.  Id. at 8.

Plaintiff informed Defendant Tillman that she was closing her door until the supervisor arrived.  Id.  Defendant Tillman responded by pushing against the door with his shoulder to prevent it from closing.  Id.  Plaintiff was able to close the door, but Defendant Tillman used his shoulder to break the door off its frame.  Id. He then entered Plaintiff's home, grabbed Plaintiff, wrenched both arms behind her back and used his leg to sweep Plaintiff's legs from underneath her and knock her to the floor.  Id.  Defendant Tillman placed a knee on Plaintiff's back, "roughly handcuffed her" and "knowingly us[ed] excessively tight restraints [that] he was told were causing Plaintiff pain and injury."  Id.  Meanwhile, both Plaintiff's son and Plaintiff herself informed Defendant Tillman that Plaintiff suffered from health problems; Plaintiff specifically told Defendant Tillman that she had a seizure disorder and restrictive lung disease.  Id. at 9.  Defendant Tillman nonetheless remained on top of Plaintiff, and she subsequently had a seizure.  Id.

A CCPD supervisor arrived at Plaintiff's home, at which point Plaintiff's handcuffs were removed and her medical needs addressed by EMS.[1]  Id.  In lieu of

---

[1] Although Plaintiff declined immediate transport to the hospital, Plaintiff sought medical treatment later that day for pain and injuries resulting from the encounter with Defendant Tillman.  [Doc. 44, p. 9].  Plaintiff's injuries included "severe lumbar facet pain, cervical

an arrest, Plaintiff was given citations on charges of misdemeanor obstruction and criminal trespass – family violence.  Id. at 9–10.  These charges were later dropped or otherwise dismissed.  Id. at 10.

Upon arriving at Plaintiff's residence, the CCPD supervisor informed Clark that he could not enter Plaintiff's home without a court order.  Id. at 13.  The CCPD supervisor asked Defendant Tillman why he kicked down Plaintiff's door.  Id. at 10.  Defendant Tillman responded that he did so "because we had the charge of criminal trespass" and, when asked again, said that "he feared for his safety" because he "didn't know what was behind the door."  Id.  Finally, Defendant Tillman informed the CCPD supervisor that he instructed Plaintiff to open her door before he broke it down, but Defendant Tillman did not ask or tell Plaintiff to open her door during the encounter.  Id.

A CCPD Internal Affairs review of this incident found that Defendant Tillman "incorrectly believed that a crime of Criminal Trespass – Family Violence had occurred, when in fact the matter was purely civil in nature."  Id. at 13.  That review concluded that Defendant Tillman violated CCPD policy by forcibly entering Plaintiff's home and arresting her.  Id.  As part of the investigation into

---

facet pain, left shoulder impingement, hip and neck pain, radial styloid tenosynovitis, and migraine headaches, which continue today."  Id.

Defendant Tillman's conduct, the CCPD Chief of Police determined that
Defendant Tillman lacked probable cause to arrest Plaintiff or to issue a family
violence charge against her; Plaintiff was within her rights to refuse Clark entry
into her home; and Defendant Tillman's decision to forcibly enter Plaintiff's home
on the premise of exigent circumstances was "unfounded." Id. at 14.  The
investigation also concluded that Defendant Tillman violated CCPD policies
related to civil disturbances, arrest procedures and use of force, as well as County
Civil Service Rules on unbecoming conduct and improper/negligent performance.
Id. at 14–15.

## B.    Procedural History

Plaintiff filed this action in the State Court of Clayton County on June 10,
2020.  [Doc. 1-1].  Defendant Tillman removed the case to this Court on August 6,
2020.  [Doc. 1].  Plaintiff filed an Amended Complaint on May 4, 2021, adding
Clayton County, Georgia, ("Defendant Clayton County"), as a defendant.[2]  [Doc.
44].  In the Amended Complaint, Plaintiff brought four claims against Defendant
Tillman under 42 U.S.C. § 1983 and the Fourth Amendment to the United States
Constitution:  (1) unlawful entry/seizure, (2) excessive force, (3) false arrest and
(4) malicious prosecution.  Plaintiff also brought six state-law claims against

---

[2] Plaintiff's initial Complaint named only Tillman as a defendant.  See [Doc. 1-1, p. 2].

Defendant Tillman:  (1) assault, (2) battery, (3) intentional infliction of emotional distress, (4) malicious arrest, (5) malicious prosecution and (6) false imprisonment. Plaintiff brought one claim under § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), against Defendant Clayton County, alleging that it knew or should have known that CCPD's training was deficient in "(1) distinguishing purely civil matters from criminal matters; (2) de-escalation measures; and (3) circumstances justifying warrantless entry into a citizen's home."  [Doc. 44, p. 27].

On May 17, 2021, Defendant Tillman filed a Motion to Dismiss Plaintiff's Amended Complaint, arguing that he is entitled to qualified immunity on Plaintiff's § 1983 claims, that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims and that, alternatively, he is entitled to official immunity as to Plaintiff's state-law claims.  [Doc. 50].  Defendant Clayton County filed a Motion to Dismiss Plaintiff's Amended Complaint on May 26, 2021, arguing that Plaintiff failed to state a claim under Monell.  [Doc. 53].

## ANALYSIS

**A.   Legal Standard**

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable

to the plaintiff." <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

**B.    Claims against Defendant Tillman**

Plaintiff brought both federal claims under § 1983 and state-law claims under Georgia law against Defendant Tillman.  The Court will address each group of claims in turn.

**1.    *§ 1983 Claims***

Defendant Tillman argues that he is entitled to qualified immunity on Plaintiff's § 1983 claims.  The defense of qualified immunity is ordinarily addressed at the summary judgment stage of a case. <u>Chesser v. Sparks</u>, 248 F.3d

1117, 1121 (11th Cir. 2001).  Nevertheless, the Eleventh Circuit Court of Appeals held that it may be raised and considered on a motion to dismiss.  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  Because qualified immunity is a "'defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'"  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  But even though "'qualified immunity questions should be resolved at the earliest possible stage of litigation,'" the United States Supreme Court "has not suggested that the procedural rules applicable to a motion to dismiss should be abrogated."  Byrd v. City of Atlanta, 683 F. Supp. 804, 812 (N.D. Ga. 1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When considering the qualified immunity defense on a motion to dismiss, a court must determine whether the "complaint fails to allege the violation of a clearly established constitutional right."  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337).

Under the doctrine of qualified immunity, government officials are shielded from liability when acting within the scope of their discretionary authority unless they violated a plaintiff's clearly established statutory or constitutional rights.  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d

583 (11th Cir. 1994).  Once a defendant shows that his actions were within his

discretionary authority, "the burden shifts to the plaintiff to show that qualified

immunity is not appropriate."[3]  Paez, 915 F.3d at 1284.  A defendant is entitled to

qualified immunity unless the plaintiff shows that:  (1) the defendant violated a

federal statutory or constitutional right and (2) the right was clearly established

when the violation occurred.  Id.  Importantly, "[b]oth elements of this test must be

present for an official to lose qualified immunity, and this two-pronged analysis

may be done in whatever order is deemed most appropriate for the case."  Rivera v.

Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019) (quoting Brown v. City of

Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)).

　　　As to the first element, the Court must determine "whether [the] plaintiff's

allegations, if true, establish a constitutional violation."  Keating v. City of Miami,

598 F.3d 753, 762 (11th Cir. 2010) (alteration in original) (quoting Hope v. Pelzer,

536 U.S. 730, 736 (2002)).  The Court construes the facts alleged "'in the light

most favorable to the party asserting the injury.'"  Lee, 284 F.3d at 1194 (quoting

Saucier v. Katz, 533 U.S. 194, 201 (2001)).

---

[3] Plaintiff does not contest that Defendant Tillman acted within the scope of his
discretionary authority during the events at issue; therefore, the Court will not further
discuss this component of the qualified immunity analysis.

For the second element, a plaintiff must show that the defendant violated a statutory or constitutional right that was clearly established when the violation occurred.  The Eleventh Circuit uses multiple methods to determine whether a right was clearly established during the time at issue.  First, a plaintiff "can show that a materially similar case has already been decided, giving notice to the police." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).  Case law need not be factually identical; "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Fils v. City of Aventura, 647 F.3d 1272, 1291 (11th Cir. 2011) (quoting Hope, 536 U.S. at 741).  A second method requires the plaintiff to demonstrate that "a broad statement of principle within the Constitution, statute, or case law . . . clearly establishes a constitutional right." Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009); see also Mercado, 407 F.3d at 1159.  Finally, a narrow exception exists for "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis, 561 F.3d at 1292.  Ultimately, "*fair and clear notice* to government officials is the cornerstone of qualified immunity." Bashir v. Rockdale Cnty., 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002)).

Because Plaintiff does not contest that Defendant Tillman's actions were within his discretionary authority, the burden shifts to Plaintiff to show that Defendant Tillman violated a clearly established right.  Defendant Tillman argues that Plaintiff failed to do so.  The Court will consider Defendant Tillman's arguments as to Plaintiff's claims below, determining for each claim (1) whether Plaintiff sufficiently alleged a violation of her constitutional rights and (2) if so, whether those rights were clearly established when the offensive conduct occurred.

        i.        *Unlawful Entry/Seizure*

Plaintiff contends that Defendant Tillman violated her Fourth Amendment right to be secure from unreasonable searches and seizures when he entered her home without a warrant, consent or exigent circumstances.  Defendant Tillman argues that he had reasonable suspicion of exigent circumstances, which justified his warrantless entry.  Specifically, Defendant Tillman contends that the supposed destruction or disposal of Clark's property, "as evidence of [Plaintiff's] criminal trespass of said property, as well as the prospect of [Plaintiff's] unobserved preparation for armed resistance," constituted exigent circumstances.  [Doc. 50-1, p. 8].

The Court first considers whether Plaintiff alleged a violation of a constitutional right.  The "physical entry of the home is the chief evil against which

11

the wording of the Fourth Amendment is directed." United States v. U.S. Dist. Ct.

for E.D. Mich., S. Div., 407 U.S. 297, 313 (1972).  As such, "'searches and

seizures inside a home without a warrant are presumptively unreasonable.'"

Bashir, 445 F.3d at 1327 (quoting Payton v. New York, 445 U.S. 573, 586 (1980)).

An officer may nonetheless enter a home without a warrant if given voluntary

consent to do so or upon a showing of both probable cause and exigent

circumstances.  Id. at 1328.

        Defendant Tillman did not have a search warrant for Plaintiff's residence,

and Plaintiff did not consent to his entry into her home.  Defendant Tillman argues

that he nonetheless had "reasonable suspicion" that exigent circumstances existed,

which justified his warrantless entry.  [Doc. 50-1, p. 8].  However, for the exigent

circumstances exception to apply, Defendant Tillman must show probable cause,

not merely reasonable suspicion, of exigent circumstances.[4]  Defendant Tillman

---

[4] In his Motion to Dismiss, Defendant Tillman cites to legal authority to support the proposition that he needed only reasonable suspicion, not probable cause, of the existence of exigent circumstances.  See [Doc. 50-1, p. 7].  The cases cited by Defendant Tillman permit reasonable suspicion of exigent circumstances to justify a no-knock entry during the execution of a search warrant.  See, e.g., Richards v. Wisconsin, 520 U.S. 385, 394 (1997); Santana v. Miami-Dade Cnty., 688 F. App'x 763, 768 (11th Cir. 2017). Defendant Tillman did not have a warrant to search Plaintiff's home.  Therefore, cases about the knock-and-announce requirement for executing search warrants have no bearing on whether Defendant Tillman's conduct in this instance was permissible under the Fourth Amendment.

did not argue that he had probable cause for his actions.  Furthermore, Defendant Tillman's arguments about the existence of exigent circumstances—the alleged destruction of property or Plaintiff's "unobserved preparation for armed resistance"—assume facts not pled in the Amended Complaint.  At the motion to dismiss stage, though, the Court must "accept[] the allegations in the [Amended Complaint] as true and constru[e] them in the light most favorable to" Plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  As such, Plaintiff alleged facts sufficient to show that Defendant Tillman's warrantless entry into her home violated her Fourth Amendment rights.

Having concluded that Plaintiff alleged a constitutional violation, the Court now considers whether the right at issue was clearly established when the offensive conduct occurred.  In the Amended Complaint, Plaintiff contends that "it was clearly established under the law that a law enforcement officer may not, absent exigent circumstances, cross the threshold of a home to effect a warrantless arrest." [Doc. 44, p. 15].  Plaintiff further argues that no exigent circumstances existed to justify Defendant Tillman's forcible entry into her home.  According to Defendant Tillman, the Amended Complaint "identifies no binding authority whatsoever that could have put [him] on notice that, under the circumstances, his conduct

constituted a clearly established violation of [Plaintiff's] rights."  [Doc. 50-1, p. 13].

The Amended Complaint alleges sufficient facts showing the violation of a clearly established right against warrantless entry of the home absent either consent or exigent circumstances and probable cause.  Contrary to Defendant Tillman's position, Plaintiff need not identify binding legal authority in her pleading to overcome the affirmative defense of qualified immunity.[5]  Instead, when assessing the qualified immunity defense at the motion to dismiss stage, the Court asks whether Plaintiff alleged sufficient *facts* showing the violation of a clearly established right.[6]  See Byrd, 683 F. Supp. at 812–13.  Here, Plaintiff alleges that Defendant Tillman forcibly entered her home without a warrant, consent or exigent circumstances.  Binding precedent clearly establishes this conduct as violative of the Fourth Amendment such that Defendant Tillman would have been on notice that his actions were unlawful.  See, e.g., Payton, 445 U.S. at 590 ("In terms that

_____

[5] Nevertheless, the Amended Complaint specifically references Bailey v. Swindell, in which the Eleventh Circuit held that an officer violated clearly established law when he forcibly entered the plaintiff's home to conduct a warrantless arrest.  940 F.3d 1295, 1303 (11th Cir. 2019).

[6] Defendant Tillman appears to make this argument—that Plaintiff failed to identify relevant binding authority in the Amended Complaint—with respect to all of Plaintiff's § 1983 claims, not just her claim for unlawful entry.  The Court will not repeat this analysis for every claim because the principle remains the same:  in a pleading, a plaintiff need only identify *facts* showing the violation of a clearly established right.

apply equally to seizures of property and to seizures of persons, the Fourth

Amendment has drawn a firm line at the entrance to the house.  Absent exigent

circumstances, that threshold may not reasonably be crossed without a warrant.");

Bashir, 445 F.3d at 1331 ("[I]t was clearly established [that] the deputies' conduct

violated the Fourth Amendment.  A reasonable law enforcement officer faced with

these circumstances would have known he could not enter the home . . . without a

warrant, exigent circumstances, or consent."); Walters v. Freeman, 572 F. App'x

723, 730–31 (11th Cir. 2014) ("[I]t was clearly established at the time of the

incident . . . that [the officer's] conduct violated [the plaintiff's] right to be secure

in her home from warrantless, unconsented, and unjustified police intrusions.").

As such, the allegations in the Amended Complaint support the conclusion that

Defendant Tillman violated a clearly established constitutional right by unlawfully

entering Plaintiff's home.

      *ii.*      *False Arrest*

Plaintiff contends that Defendant Tillman violated her Fourth Amendment

right to be free from unlawful seizures and false arrests by arresting her without

probable cause.  Defendant Tillman argues that "exigent circumstances existed for [Plaintiff's] seizure."[7]  [Doc. 50-1, p. 9].

First is the consideration of whether Plaintiff alleged a violation of a constitutional right.  "A claim for false arrest arises when an arrest occurs without a warrant and without probable cause."  Harris v. Goderick, 608 F. App'x 760, 763 (11th Cir. 2015).  If an officer had probable cause at the time of arrest, a plaintiff is barred from bringing a false arrest claim.  Id.  "Probable cause to arrest exists where 'the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.'"  Wilson v. Attaway, 757 F.2d 1227, 1235 (11th Cir. 1985) (quoting United States v. Pantoja-Soto, 739 F.2d 1520, 1523 (11th Cir. 1984)).

An officer who executed a warrantless arrest without probable cause may still receive qualified immunity if he had *arguable* probable cause for the arrest.

[7] In his Motion to Dismiss, Defendant Tillman addresses Plaintiff's claims for unlawful entry and unlawful seizure (in addition to Plaintiff's claims for excessive force and malicious prosecution) but does not separately or otherwise address Plaintiff's false arrest claim.  See [Doc. 50-1, p. 8].  Because a false arrest is a form of unlawful seizure, see Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020), the Court will assume that Defendant's arguments addressing "unlawful seizure" are directed toward Plaintiff's "false arrest" claim.

Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010).  When assessing whether an officer had arguable probable cause for an arrest, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed."  Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).  However, if "an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures."  Carter v. Butts Cnty., 821 F.3d 1310, 1320 (11th Cir. 2016).

Plaintiff alleges that Defendant Tillman lacked probable cause to arrest her or issue citations on the charges of criminal trespass and obstruction.  In his Motion to Dismiss, Defendant Tillman does not argue that he had probable cause or arguable probable cause for Plaintiff's arrest.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").  Instead, he merely references his earlier argument that exigent circumstances justified his warrantless entry into Plaintiff's home and contends that exigent circumstances therefore existed for Plaintiff's arrest.  Even if exigent circumstances existed for Plaintiff's arrest—of which the Court is not convinced—Defendant Tillman would

still need to show probable cause to justify his actions.  See Bashir, 445 F.3d at

1328 ("[A] warrantless arrest in a home violates the Fourth Amendment unless the

arresting officer had probable cause to make the arrest *and* either consent to enter

or exigent circumstances demanding that the officer enter the home without a

warrant.").  In the Amended Complaint, Plaintiff alleges that Defendant Tillman

entered her home without a warrant, probable cause, exigent circumstances or

consent and arrested her.  Defendant Tillman does not argue that he had probable

cause to arrest Plaintiff, and the facts as presented give this Court no reason to

think he did.  Consequently, Plaintiff alleged sufficient facts to show that

Defendant Tillman violated her Fourth Amendment right to be free from unlawful

seizures and false arrests.

Because Plaintiff alleged a violation of a constitutional right, the Court now

turns to whether that right was clearly established.  In his Motion to Dismiss,

Defendant Tillman argues that Plaintiff failed to point to clearly established law

that would have put a reasonable officer on notice that his actions lacked arguable

probable cause.  However, as noted, Defendant Tillman does not argue that his

actions *were* supported by probable cause in the first place.  And even if he were to

make this argument, he is incorrect that Plaintiff failed to point to clearly

established law on point.  The Amended Complaint cites Bailey v. Swindell, in

which the Eleventh Circuit held that the defendant "crossed a constitutional line" by conducting a warrantless arrest in a home without exigent circumstances or consent to enter.  940 F.3d 1295, 1303 (11th Cir. 2019).  The court observed that this line "was drawn unambiguously" by Supreme Court precedent and "has been reaffirmed repeatedly."  Id.  Further, other cases in the Eleventh Circuit "clearly establish[] that an officer may not execute a warrantless arrest without probable cause and either consent or exigent circumstances, even if the arrestee is standing in the doorway of [her] home when the officers conduct the arrest."  Moore v. Pederson, 806 F.3d 1036, 1050 n.14 (11th Cir. 2015) (citing McClish v. Nugent, 483 F.3d 1231, 1240–42 (11th Cir. 2007)).  Clearly established law, then, confirms that an officer may not enter an individual's home without a warrant to conduct an arrest if he does not have probable cause *and* exigent circumstances or consent.  As such, Plaintiff met her burden of alleging sufficient facts to show that Defendant Tillman violated her right to be free from unlawful seizures and false arrests and that this right was clearly established when the violation occurred.

      *iii.*     *Excessive Force*

Plaintiff alleges that Defendant Tillman violated her Fourth Amendment right to be free from excessive force in the course of an arrest.  Defendant Tillman contends that the circumstances—namely, the "physical altercation" in which

Plaintiff attempted to close her door while Defendant Tillman sought entry—
"justified [his] use of a sweep maneuver to place [Plaintiff] under arrest." [Doc.
50-1, p. 10]. Defendant Tillman appears to argue that his use of force was thus
objectively reasonable.

The Court first assesses whether Plaintiff alleged a violation of a
constitutional right. "To establish a Fourth Amendment claim for excessive force,
a plaintiff 'must allege (1) that a seizure occurred and (2) that the force used to
effect the seizure was unreasonable.'" Corbitt, 929 F.3d at 1315 (quoting Troupe
v. Sarasota Cnty., 419 F.3d 1160, 1166 (11th Cir. 2005)). Determining whether
force was unreasonable "requires careful attention to the facts and circumstances of
each particular case, including the severity of the crime at issue, whether the
suspect poses an immediate threat to the safety of the officers or others, and
whether [s]he is actively resisting arrest or attempting to evade arrest by flight."
Graham v. Connor, 490 U.S. 386, 396 (1989).

First, Plaintiff alleges that a seizure occurred when Defendant Tillman
arrested her without probable cause. Second, the circumstances of the case and the
factors enunciated in Graham lead to the conclusion that the force used was
unreasonable. As to the nature of the "crime" at issue, Plaintiff was cited for
misdemeanor charges, which were ultimately dropped. See Mitchell v. Parker, 271

20

F. Supp. 3d 1364, 1374 (N.D. Ga. 2017) (noting that the plaintiff's alleged crime, a misdemeanor, was less severe than the crimes in other cases where courts denied qualified immunity on excessive force claims).  The Amended Complaint contains no facts to suggest that Plaintiff posed a threat to Defendant Tillman or to anyone else; in fact, the Amended Complaint shows that Plaintiff was trying to retreat from the encounter when Defendant Tillman forcibly entered her home and arrested her.  Finally, Plaintiff informed Defendant Tillman that she was closing her door until a CCPD supervisor arrived.  Plaintiff's decision to remain in her home behind a closed door while waiting for the arrival of an additional officer can hardly be interpreted as "resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The Court disagrees with Defendant Tillman's conclusory assertion that "the circumstances justified [his] use of a sweep maneuver to place [Plaintiff] under arrest." [Doc. 50-1, p. 10].  Defendant Tillman argues that the "physical altercation" with Plaintiff justified his use of force.  However, Plaintiff did not abruptly shut the door on Defendant Tillman; she informed him that she was closing the door and waiting inside her home until a supervisor arrived.  In fact, Plaintiff had no obligation to act any differently when confronted by Defendant Tillman at her door.  Cf. Kentucky v. King, 563 U.S. 452, 469–70 (2011) ("When

21

law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.  And . . . the occupant has no obligation to open the door or to speak.").  It was Defendant Tillman who then initiated the physical altercation by forcibly entering Plaintiff's home.  Accordingly, Defendant Tillman's argument on this point is unpersuasive, and Plaintiff has successfully stated a violation of her right to be free from excessive force in the course of an arrest.

The Court now turns to the question of whether Plaintiff's right to be free from excessive force in these circumstances was clearly established.  As an initial matter, "[i]t is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment."  Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998).  The Eleventh Circuit has recognized "a broad statement of principle ensconced in our case law that clearly establishes that the use of force against an arrestee who, *inter alia*, is not a threat, has not exhibited aggressive behavior, and has not actively resisted arrest is excessive."  Landsman v. City of Vero Beach, 621 F. App'x 559, 563 (11th Cir. 2015).

In Landsman, officers followed a plaintiff who was suspected of a hit-and-run as she drove to her apartment; they spoke to her outside her home, and she

indicated that she needed to go inside to use the restroom.  Id. at 561.  The plaintiff

walked to the front door of the apartment, but before she could enter, an officer

performed "a modified arm-bar takedown" that sent both the officer and plaintiff to

the ground.  Id.  The plaintiff sued the officer under § 1983 for excessive force, and

the district court denied the officer's motion for summary judgment, in which he

asserted the qualified immunity defense.  Id. at 560–61.  On appeal, the Eleventh

Circuit noted that the plaintiff "was neither agitated nor uncooperative; she was

neither physically nor verbally aggressive; she did not attempt to flee the apartment

complex; and she did not drive away from the officers quickly."  Id. at 563.  In

light of these facts and the "broad statement of principle" prohibiting excessive

force in such situations, the court held that "no reasonable officer could have had a

mistaken understanding as to whether the particular amount of force was legal in

the circumstances."  Id. (quoting Lee, 284 F.3d at 1200).

 The Court finds Landsman and the "broad statement of principle" it

references to be instructive here.[8]  Plaintiff was retreating into her home and thus

---

[8] In his Reply, Defendant Tillman argues that Landsman "involve[d] markedly different
circumstances" and thus "cannot constitute 'clearly established law' with the requisite
factual specificity."  [Doc. 59, p. 13].  However, showing a clearly established right by
referencing factually specific case law is only one way to do so.  Landsman affirmed that
a plaintiff can make this showing by pointing to the existence of "'a broad statement of
principle within the Constitution, statute, or case law that clearly establishes a
constitutional right.'"  621 F. App'x at 563 (quoting Lewis, 561 F.3d at 1291–92).  In

was "not a threat."  Id.  Although the Amended Complaint acknowledges that

Plaintiff was "agitated," [Doc. 44, p. 7], there are no facts to suggest that she

"exhibited aggressive behavior," Landsman, 621 F. App'x at 563.  Finally,

Plaintiff attempted to close the door while Defendant Tillman stood outside, but

this does not amount to "actively resist[ing] arrest," especially since Plaintiff

informed Defendant Tillman of her intention to close the door and remain inside

while she waited for another officer to arrive.  Id.  As such, when accepted as true

and viewed in the light most favorable to Plaintiff, the facts support an inference

that it was clearly established that the force used by Defendant Tillman was not

"reasonably proportionate to the need for that force," when "measured by the

severity of the crime, the danger to the officer, and the risk of flight."  Lee, 284

F.3d at 1198.  At this stage in the litigation, Plaintiff met her burden to overcome

Defendant Tillman's qualified immunity defense with regard to the excessive force

claim.

---

Landsman, the court decided that the plaintiff's right to be free from excessive force
under the circumstances was clearly established by virtue of this "broad statement of
principle."  Id.  This Court follows suit and concludes that this broad principle clearly
established Plaintiff's right to be free from excessive force.  As such, the factual
similarity of Landsman to the instant case is not dispositive.

### iv.  *Malicious Prosecution*

Plaintiff argues that Defendant Tillman violated her Fourth Amendment rights by arresting her without probable cause and initiating a criminal prosecution against her.  Defendant Tillman alleges that Plaintiff failed to plead that she suffered an unconstitutional seizure, which is an element of malicious prosecution, and that he is therefore entitled to qualified immunity on this claim.

First, Plaintiff must show the violation of a constitutional or statutory right. A plaintiff asserting a malicious prosecution claim under § 1983 must prove both (1) a "violation of [her] Fourth Amendment right to be free from unreasonable seizures" and (2) "the elements of the common law tort of malicious prosecution." Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (emphasis omitted).  The Court earlier concluded that through her claim for false arrest, Plaintiff alleged a violation of her Fourth Amendment right to be free from unlawful seizures, thus meeting the first component.  As to the second component, the elements of the malicious prosecution tort under Georgia law and for the purposes of a § 1983 claim are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Id. at 882.  Plaintiff alleged in the Amended Complaint that (1) Defendant Tillman

issued a citation to Plaintiff for misdemeanor charges; (2) he lacked probable cause for those charges;[9] (3) the charges were subsequently dropped or dismissed; and (4) Plaintiff suffered damages as a result of this criminal prosecution.  Plaintiff sufficiently alleged a claim of malicious prosecution.

Having shown a constitutional violation, Plaintiff must now show that the violated right was clearly established.  In a malicious prosecution claim, the right at issue is not a "federal 'right' to be free from malicious prosecution" but rather "the right to be free from an unlawful seizure which is part of a prosecution."  Whiting v. Traylor, 85 F.3d 581, 584 n.4 (11th Cir. 1996), abrogated on other grounds by Wallace v. Kato, 549 U.S. 384, 389–90 (2007).  As such, the proper inquiry is whether the unlawfulness of the seizure forming the basis of the malicious prosecution claim was clearly established.

"[I]t is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment."  Grider, 618 F.3d at 1256.  Vis-à-vis her claim for false arrest, Plaintiff sufficiently alleged that Defendant Tillman violated her clearly established right to be free from an arrest

---

[9] Under Georgia law, "malice may be inferred in the absence of probable cause" for a malicious prosecution claim.  Vojnovic v. Brants, 612 S.E.2d 621, 625 (Ga. Ct. App. 2005).  As noted earlier, Defendant Tillman did not argue that he had probable cause for the arrest and consequently waived that issue with respect to his Motion to Dismiss.

unsupported by probable cause or exigent circumstances.  Plaintiff therefore

showed that the Fourth Amendment right against unreasonable seizures—which

forms the basis of her malicious prosecution claim—was clearly established.

Plaintiff met her burden of alleging the violation of a clearly established

constitutional right with respect to the malicious prosecution claim.

For the foregoing reasons, Defendant Tillman's Motion to Dismiss

Plaintiff's § 1983 claims is **DENIED.**

### 2.    *State-Law Claims*

Plaintiff brings the following claims under Georgia law against Defendant

Tillman:  (1) assault, (2) battery, (3) intentional infliction of emotional distress, (4)

malicious arrest, (5) malicious prosecution and (6) false imprisonment.  Defendant

Tillman argues that the Court should either decline to exercise supplemental

jurisdiction over these claims or dismiss them on the grounds that he is entitled to

official immunity.  The Court will address these arguments in turn.

### i.    *Supplemental Jurisdiction*

In his Motion to Dismiss, Defendant Tillman contends that Plaintiff's § 1983

claims should be dismissed on qualified immunity grounds, and he argues that the

Court should decline to exercise supplemental jurisdiction over Plaintiff's

remaining state-law claims as a result.  The Court concluded above that Plaintiff's

§ 1983 claims should proceed.  Accordingly, the Court declines to dismiss Plaintiff's state-law claims on this ground.

ii.    *Official Immunity*

"Under Georgia's doctrine of official immunity, state public officials generally cannot be held personally liable for discretionary acts performed within the scope of their official authority." Davis v. Lang, 706 F. App'x 551, 556 (11th Cir. 2017).  However, public officials are not entitled to official immunity if "they act with actual malice or with actual intent to cause injury in the performance of their official functions." Id. (quoting Ga. Const. art. I, § 2, ¶ IX(d)).  In the context of official immunity, actual malice means "a deliberate intention to do wrong" or "the intent to cause the harm suffered by the plaintiff[]." Id. (quoting Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007)).  To show actual malice, a plaintiff must allege facts that evince more than "the reckless disregard for the rights or safety of others," Murphy, 647 S.E.2d at 60, and more than "deliberate indifference," Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1145 (N.D. Ga. 2016). "[A]llegations of malice and intent can be pleaded generally," but "the pleading must still contain sufficient facts to make its claims plausible under Rule 8 [of the Federal Rules of Civil Procedure]." Johnson v. Belcher, No. 1:20-CV-3409, 2021 WL 4459690, at *9 (N.D. Ga. Sept. 29, 2021).

28

Defendant Tillman argues that he is entitled to official immunity because he was performing a discretionary function during the events at issue, thus requiring Plaintiff to show that he acted with malice—which he claims Plaintiff failed to do. Plaintiff appears to concede that Defendant Tillman was performing a discretionary function, but she alleges that the facts in the Amended Complaint make clear that Defendant Tillman acted with malice or an intent to injure.

Based on the allegations in the Amended Complaint, Plaintiff's state-law claims of assault, battery, intentional infliction of emotional distress and false imprisonment relate to Defendant Tillman's forced entry into Plaintiff's home and use of force to arrest Plaintiff. As to this encounter, Plaintiff alleges that Defendant Tillman "knowingly us[ed] excessively tight restraints" that "he was told were causing Plaintiff pain and injury." [Doc. 44, p. 8]; see also [Doc. 56, p. 25] ("[Defendant Tillman] ignored evidence that his continued application of force was causing and would continue to cause [Plaintiff] great pain and injury."). Plaintiff contends further that Defendant Tillman "did not remove or loosen the handcuffs" and "remained on top of [her] . . . with [his] knee on her back," despite having been informed by Plaintiff's son and Plaintiff herself that Plaintiff suffered from multiple health conditions. [Doc. 44, p. 9]. The factual allegations support an inference that Defendant Tillman exhibited a deliberate intent to injure when,

after being informed that Plaintiff was at risk of seizures, he continued to restrain her and used his body weight to keep her pinned to the ground.  Defendant Tillman's actions, then, caused Plaintiff to suffer the precise harm of which he had been warned.  Therefore, the allegations raise a plausible inference that Defendant Tillman's conduct evinced the requisite "intent to cause the harm suffered by [Plaintiff]."  Murphy, 647 S.E.2d at 60; see also Gates v. Khokhar, 884 F.3d 1290, 1304 (11th Cir. 2018) ("[T]he phrase 'actual intent to cause injury'. . . means 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'" (quoting West v. Davis, 767 F.3d 1063, 1073 (11th Cir. 2014))).  Because the facts as pled in the Amended Complaint show a deliberate intent to injure, the Court declines to dismiss Plaintiff's claims for assault, battery, intentional infliction of emotional distress and false imprisonment on the grounds of official immunity.

Plaintiff's remaining state-law claims (for malicious arrest and malicious prosecution) concern events that occurred after the encounter at Plaintiff's door—specifically, Defendant Tillman's issuance of misdemeanor citations to Plaintiff. Defendant Tillman's Motion to Dismiss does not address the question of whether the actions underlying Plaintiff's malicious arrest and malicious prosecution charges were performed with the requisite malice.  See [Doc. 50-1, p. 17]

(referencing only the harm Plaintiff suffered as a result of the physical encounter at her door).  By failing to address whether he acted with actual malice in issuing citations to Plaintiff, Defendant Tillman waived this issue with respect to his motion to dismiss.  See Hamilton, 680 F.3d at 1319.

Plaintiff contends that Defendant Tillman manufactured criminal charges against her "to create the illusion that his actions were justified," despite the fact that he allegedly knew that he lacked probable cause to arrest her and that he had "no authority for his unlawful entry into her home."  [Doc. 44, p. 12].  She also argues that Defendant Tillman lied to the CCPD supervisor by claiming that he told Plaintiff to open her door prior to his entry.  According to Plaintiff, Defendant Tillman made this claim to imply that Plaintiff violated a lawful order, thereby justifying the obstruction charge.  Defendant Tillman does not respond to or dispute this assertion.  When accepted as true and construed most favorably to Plaintiff, these facts state a plausible claim that Defendant Tillman acted with a "deliberate intention to do a wrongful act" when he arrested Plaintiff for charges that he knew to be unfounded.  Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999).  "To defeat official immunity under Georgia law, Plaintiff must allege facts supporting an inference that Defendant [Tillman] acted with actual malice or intent to injure."  Guerra v. Rockdale Cnty., 420 F. Supp. 3d 1327, 1345 (N.D. Ga.

2019).  Plaintiff has done so here.  The Court declines to dismiss Plaintiff's state-law claims for malicious arrest and malicious prosecution on the basis of official immunity.  Defendant Tillman's Motion to Dismiss Plaintiff's state-law claims is therefore **DENIED**.

## C.    Claims against Defendant Clayton County

Plaintiff alleges that Defendant Clayton County is liable under § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), for the violation of her constitutional rights.  Specifically, Plaintiff alleges that Defendant Clayton County was deliberately indifferent to the constitutional rights of its citizens by failing to ensure that its police officers were adequately supervised, trained and disciplined.  According to Plaintiff, this deliberate indifference and "assent[] to insufficient police training in de-escalation measures, exigent circumstances justifying warrantless entry, and distinguishing purely civil matters from criminal domestic disputes" violated her constitutional rights and caused her resulting injuries.  [Doc. 44, p. 28].  Defendant Clayton County argues that this claim should be dismissed because Plaintiff failed to allege facts sufficient to establish Monell liability.  Defendant Clayton County also seeks dismissal of Plaintiff's claims against it for compensatory damages, attorney's fees, costs and punitive damages.

The Court will address in turn Plaintiff's <u>Monell</u> claim and her request for damages.

**1.    *§ 1983 Claim under <u>Monell</u>***

In <u>Monell</u>, the Supreme Court held that municipal and other local governments may be sued under § 1983.  436 U.S. at 690.  However, local and municipal entities enjoy more limited liability under this statute than their state counterparts.  "The Supreme Court has placed strict limitations on municipal liability under § 1983," namely that municipal entities cannot be held liable on a theory of respondeat superior.  <u>Grech v. Clayton Cnty.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003).  Specifically,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

<u>Monell</u>, 436 U.S. at 694.  To state a § 1983 claim against a city or county, then, a plaintiff must show "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).  "The standard for holding a municipality liable under [§] 1983 is high." <u>Denham v. Corizon Health,</u>

Inc., 675 F. App'x 935, 944 (11th Cir. 2017).  Finally, on a motion to dismiss, the

Court considers only whether the facts as alleged state a plausible claim to relief

under Monell.  Rogers v. City of Atlanta, 214 F. Supp. 3d 1314, 1318 (N.D. Ga.

2016) ("Whether Plaintiff will ultimately prevail on her [Monell] claims is not a

question before the Court on a motion to dismiss.").

The Court will determine below (1) whether Plaintiff identified a custom or

policy of Defendant Clayton County; (2) if she did, whether that custom or policy

showed "deliberate indifference"; and (3) if so, whether the custom or policy of

deliberate indifference caused her injury.[10]

<blockquote>i.      <em>Existence of Custom or Policy</em></blockquote>

Plaintiff must first "identify a municipal 'policy' or 'custom' that caused

[her] injury."  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)

(quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).

This "threshold" requirement ensures that municipalities are held liable "'only for

those deprivations resulting from the decisions of its duly constituted legislative

body or of those officials whose acts may fairly be said to be those of the

municipality'" and "prevents the imposition of liability based upon an isolated

---

[10] The Court earlier concluded that Plaintiff alleged a violation of her constitutional rights by Defendant Tillman, an employee of Defendant Clayton County's police department, thereby satisfying the first prong under Monell.

incident." McDowell, 392 F.3d at 1290 (quoting Brown, 520 U.S. at 403–04).  A plaintiff may identify a policy or custom "by pointing to either '(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county.'"  Everett v. Cobb Cnty., 823 F. App'x 888, 893 (11th Cir. 2020) (quoting Grech, 335 F.3d at 1329).  To show a policy or custom, "it is 'generally necessary to show a persistent and wide-spread practice.'"  McDowell, 392 F.3d at 1290 (quoting Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999)).

In the Amended Complaint, Plaintiff identifies four prior incidents and three lawsuits that she alleges "offer representative examples" of Defendant Clayton County's "unofficial policy or custom" of failing to train its police officers.  [Doc. 44, p. 19].  Specifically, Plaintiff describes the following incidents as placing Defendant Clayton County on notice "that CCPD officer training was woefully deficient," id. at 16:

- *July 1, 2018 civil dispute*:  A CCPD officer forced entry into a residence, engaged in a physical altercation and used a taser on an occupant.  An internal review found that the officer had no authority to enter the residence after the homeowner denied him entry.  The officer charged the homeowner with battery and obstruction, but a grand jury dismissed the case.  The officer received a Letter of Reprimand.

- *September 3, 2018 domestic dispute call*:  A CCPD lieutenant forcibly entered a residence and arrested the alleged aggressor without a warrant.  An internal review found that the lieutenant's entry was improper because there were no exigent circumstances.  CCPD officials determined that the lieutenant's use of force was justified, and he received "general counseling" as a result of the incident.

- *October 4, 2017 domestic disturbance*:  A CCPD officer falsely reported that a detainee attempted to strike the officer with his car before running into his home.  Body camera footage disproved the officer's account.  Although CCPD officers entered the detainee's residence without a warrant or exigent circumstances, an internal review did not sustain allegations against the officers for improper conduct and procedure.  The detainee was charged with aggravated assault, but that charge was dropped.

- *November 22, 2018 incident*:  A CCPD officer reported to a residence that was playing loud music.  The officer forced entry into the home after the resident closed the front door.  He used force to arrest the resident on charges of obstruction and "prohibited noise."  An internal review concluded that the officer's arrest and use of force were not justified.  The officer received "general counseling."

See id. at 16–18.  Plaintiff alleges the same with respect to the following lawsuits:

- Perkins v. Thrasher, No. 1:14-CV-1067, 2016 WL 4532333 (N.D. Ga. Aug. 30, 2016), aff'd in relevant part, 701 F. App'x 887 (11th Cir. 2017):  A CCPD officer stopped the plaintiff, whose wife was a CCPD employee, in the CCPD employee parking lot.  The plaintiff alleged that the officer yelled at him, told him to exit his car, took him to the ground and arrested him for obstruction.  The district court held that the officer was not entitled to qualified immunity for the plaintiff's false arrest and

malicious prosecution claims, and the Eleventh Circuit upheld
on both grounds.  Clayton County was not a party in the suit.

- Curry v. County of Clayton, No. 1:16-CV-4379, 2017 WL
1540988 (N.D. Ga. Apr. 28, 2017):  According to the
complaint, the plaintiff was on the phone requesting the
presence of a CCPD supervisor when a CCPD officer ripped
the phone from her hands, forcibly grabbed her and placed her
in excessively tight restraints.  After a frivolity review of the
complaint, the district court directed the plaintiff to file an
amended complaint.  She did not do so and voluntarily
dismissed the action.

- Mann v. Joseph, No. 1:18-CV-5905 (N.D. Ga. Aug. 31, 2021):
CCPD officers and Emergency Services personnel responded to
a domestic disturbance call at an apartment.  The plaintiff
entered the apartment holding a handgun.  The plaintiff alleged
that CCPD officers pointed their firearms at him and arrested
him without arguable probable cause.  The district court found
that the officers were entitled to qualified immunity on the
plaintiff's claim for unlawful arrest.[11]

Defendant Clayton County argues that these allegations do not establish a

policy or custom as required under Monell.  The Court disagrees.  Plaintiff alleged

facts showing a series of incidents in which CCPD officers forcibly entered homes,

---

[11] Clayton County was originally a party in this lawsuit.  However, this case was before
the district court following a remand from the Eleventh Circuit.  The district court had
previously granted the defendants' motion to dismiss the plaintiff's federal claims,
including those claims asserted against Clayton County, and remanded the case to state
court.  Mann v. Joseph, No. 1:18-CV-5905, slip op. at 28 (N.D. Ga. July 17, 2019); see
also id. at 26.  On appeal, the Eleventh Circuit affirmed the dismissal of the claims
against Clayton County but reversed the dismissal of the claim for unlawful arrest against
the officers.  Mann v. Joseph, No. 19-13110, slip op. at 13 (11th Cir. Feb. 28, 2020).

used force to conduct arrests and seemingly relied on obstruction charges to justify their actions.  Courts in other cases have dismissed <u>Monell</u> claims where the plaintiff failed to allege *any* facts about the existence of a policy or custom beyond the facts pertaining to the plaintiff's own case.  <u>See, e.g.</u>, <u>Harris</u>, 608 F. App'x at 763 ("[A]s to Miami-Dade County, [the plaintiff] alleged only a single incident of deliberate indifference to his constitutional rights, and a single isolated incident is insufficient to establish a custom or policy under § 1983."); <u>Gurrera v. Palm Beach Cnty. Sheriff's Off.</u>, 657 F. App'x 886, 893 (11th Cir. 2016) ("Plaintiff fails to identify any examples beyond his own arrest of widespread unconstitutional conduct."); <u>Casado v. Miami-Dade Cnty.</u>, 340 F. Supp. 3d 1320, 1327 (S.D. Fla. 2018) ("The [a]mended [c]omplaint is devoid of any factual allegations of any prior incidents or the County's alleged knowledge and alleged failure to deter the conduct at issue."); <u>Diaz v. Miami-Dade Cnty.</u>, 424 F. Supp. 3d 1345, 1362 (S.D. Fla. 2019) ("Plaintiff's complaint is based on his sole incident of arrest, not on a demonstrated practice that results in deprivation of constitutional rights.").  Unlike those cases, Plaintiff here detailed a number of examples and provided facts beyond those related to her own encounter with CCPD officers.

It is true that "random acts or isolated incidents are insufficient to establish a custom or policy."  <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir.

1986).  However, the facts as alleged show more than an assortment of random or isolated events.  Moreover, courts have recognized that "a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees."  Gold, 151 F.3d at 1350.  When the facts are viewed in the light most favorable to Plaintiff, the Amended Complaint permits a reasonable inference that Defendant Clayton County has a policy or custom of failing to train its officers in the proper use of force, lawful entries and circumstances that constitute probable cause for arrest.  As such, Plaintiff satisfies the "threshold" requirement of alleging the existence of a policy or custom.[12]  McDowell, 392 F.3d at 1290.

      ii.     *Deliberate Indifference*

Plaintiff alleges that Defendant Clayton County's custom of failing to train its employees amounts to deliberate indifference.  As such, she "must allege sufficient facts showing that the municipality was on notice of the need to train or improve supervision and [that] it made a deliberate choice not to train or

---

[12] In its Reply, Defendant Clayton County argues that Plaintiff's Response to the Motion to Dismiss "attempt[s] to set forth a ratification theory of Monell liability."  [Doc. 60, p. 8].  However, Plaintiff does not expressly base her arguments on any such theory, and she does not argue new facts in the Response to suggest that she intended to introduce a new theory of recovery.  Defendant Clayton County did not address this supposed "ratification theory" in the Motion to Dismiss, and the Court declines to address it now.  See Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987) ("It is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief.")

supervise." Woodard v. Town of Oakman, 885 F. Supp. 2d 1216, 1235 (N.D. Ala. 2012). Failure to train may form the basis of a § 1983 claim only if the inadequate training "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989). "Deliberate indifference" entails "proof that the failing was a conscious choice by policymakers among alternative courses of action." Young v. City of Augusta, 59 F.3d 1160, 1171–72 (11th Cir. 1995).

According to Defendant Clayton County, Plaintiff did not show that the purported failure to train rose to the level of deliberate indifference. In particular, Defendant Clayton County claims that Plaintiff failed to allege a pattern of unconstitutional conduct that placed it on notice of the deficiency in training.

If a county's policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the [county] may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011). Therefore, a plaintiff bringing a Monell claim under a failure-to-train theory "ordinarily must show a 'pattern of similar constitutional violations by untrained employees.'" Watkins v. Willson, 824 F. App'x 938, 941 (11th Cir. 2020) (quoting Connick, 563 U.S. at 62).

As described earlier, the Amended Complaint presents a series of incidents and lawsuits against CCPD officers involving allegations of warrantless entries, improper arrests and use of force.  Plaintiff alleges that in each incident, the officers were inadequately disciplined:  "the officers involved received nothing more serious than a letter of reprimand or general counseling," and "[i]n at least one instance, the citizen's complaint was simply dismissed."  [Doc. 57, p. 12]. Consequently, Plaintiff argues that Defendant Clayton County "knew or should have known," as a result of these past incidents, that CCPD's officer training was deficient.  [Doc. 44, p. 28].   Plaintiff contends further that these issues "were prevalent and pervasive problems within the CCPD."  Id.

Plaintiff's allegations support an inference that Defendant Clayton County had actual—or, at the very least, constructive—notice of a need to train its officers, in light of these prior incidents.  That is, "[t]o the extent that [Defendant Clayton County] was aware of other incidents of similar conduct, this knowledge supports a theory that there was a failure to supervise or train."  Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1318 (M.D. Ala. 2002).

Defendant Clayton County seems to argue that Plaintiff's allegations are insufficient because they reference only "prior complaints" rather than "findings of unconstitutional conduct."  [Doc. 53-1, p. 12].  The Court does not agree.  First,

interrogating the merits of the incidents and lawsuits cited by Plaintiff risks

assessing the merits of Plaintiff's claims, and that is not the Court's task on a

motion to dismiss.  At this stage in the litigation, Plaintiff is only required to state a

plausible claim to relief.  See Iqbal, 556 U.S. at 678.  "The plausibility standard

'calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence' of the defendant's liability."  Chaparro v. Carnival Corp., 693 F.3d 1333,

1337 (11th Cir. 2012) (quoting Twombly, 550 U.S. at 556).  The Amended

Complaint contains enough facts to meet this standard.

Second, legal authority from the Eleventh Circuit indicates that Plaintiff's

allegations are sufficient as they are.  In Depew v. City of St. Marys, the Eleventh

Circuit found that "evidence reveal[ing] several incidents involving the use of

unreasonable and excessive force by police officers" was sufficient to show that

"the city had knowledge of improper police conduct, but failed to take proper

remedial action."  787 F.2d at 1499.  In Depew, these "incidents" included citizen

complaints and settled lawsuits, which did not necessarily result in a finding of a

constitutional violation.  Id. at 1497–98.  Rather, the incidents involved excessive

force—the challenged conduct—and were therefore sufficient to put the city on

notice.  Id. at 1499.  The Eleventh Circuit considered "[t]he continued failure of the

city to prevent known constitutional violations by its police force" to be "precisely the type of informal policy or custom that is actionable under [§] 1983." Id.

Depew is instructive here. Plaintiff's allegations include citizen complaints and lawsuits involving warrantless entries, use of force and improper arrests—conduct that Plaintiff claims reveals CCPD's training deficiencies. Plaintiff also alleges facts raising a reasonable inference that Defendant Clayton County did not take "proper remedial action." In so doing, Plaintiff met her burden of alleging a policy or custom of deliberate indifference. See, e.g., Burns v. City of Alexander City, 110 F. Supp. 3d 1237, 1249–50 (M.D. Ala. 2015) (concluding that the plaintiffs stated a Monell claim where "[t]he pleading, when read in its entirety, allege[d] that [the plaintiffs'] constitutional rights were violated by a deliberate and ongoing policy of failure to train," included prior instances of the challenged conduct and alleged that "the failure to train [was] systemic and not a failure as to [the defendant officer] alone").

### iii. *Causation*

Finally, Plaintiff must show that the policy or custom she identified "caused [her] injury." Brown, 520 U.S. at 403. A municipality's customs or policies must be the "moving force [behind] the constitutional violation" for the municipality to face § 1983 liability. City of Canton, 489 U.S. at 389 (alteration in original)

(quoting <u>Monell</u>, 436 U.S. at 694).  When a plaintiff alleges <u>Monell</u> liability on a failure-to-train theory, she must show that "the identified deficiency in a [municipality's] training program" is "closely related to the ultimate injury."  <u>Id.</u> at 391.  When considering a plaintiff's allegations, the Court asks:  "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  <u>Id.</u>

Plaintiff contends that her injuries were the "direct result" of Defendant Clayton County's failure to train its officers.  [Doc. 44, p. 15].  Defendant Clayton County argues that Plaintiff did not allege facts showing that the encounter with Defendant Tillman "was a 'highly predictable consequence' of any policies, customs, or deficiencies in training."  [Doc. 53-1, p. 12] (quoting <u>McDowell</u>, 392 F.3d at 1292].

In the Court's view, Plaintiff alleged sufficient facts to show that "the identified deficiency in [Defendant Clayton County's] training program" is "closely related" to her injury.  <u>City of Canton</u>, 489 U.S. at 391.  When taken as true and construed in Plaintiff's favor, the factual allegations in the Amended Complaint show that CCPD's training was deficient in the following areas: complying with de-escalation and use-of-force techniques, identifying the circumstances constituting lawful entry and ensuring the existence of probable

cause for obstruction charges.  According to Plaintiff, these deficiencies "directly led to the events of July 15, 2019," when Plaintiff suffered harm as a result of a CCPD officer's improper use of force, unlawful entry and unfounded obstruction charge.  [Doc. 44, p. 20].  As such, the Amended Complaint plausibly shows that but for inadequate training by CCPD, Defendant Tillman would have understood the law regarding arrests and warrantless entries, distinguished the proper amount of force, if any, to be used and ascertained whether probable cause existed for an obstruction charge.  Plaintiff therefore made the requisite showing that Defendant Clayton County's failure to train its officers caused her injuries, meeting the final prong under Monell.  Defendant Clayton County's Motion to Dismiss Plaintiff's Monell claim is **DENIED**.

> **2.    *Claim for Damages and Fees***

In the Amended Complaint, Plaintiff specifically seeks compensatory damages, attorney's and witness fees and costs against Defendant Clayton County. Plaintiff's prayer for relief includes a request for "punitive and exemplary damages"; it is unclear whether Plaintiff seeks punitive damages against Defendant Tillman, Defendant Clayton County or both.  [Doc. 44, p. 36].  To the extent that Plaintiff seeks punitive damages against it, Defendant Clayton County argues that it is immune from punitive damages.  Defendant Clayton County argues further

that should Plaintiff's underlying Monell claim face dismissal, Plaintiff's claims for attorney's fees, punitive damages and, presumably, compensatory damages should also be dismissed.  Plaintiff does not address either argument in her Response to the Motion to Dismiss.

In City of Newport v. Fact Concerts, Inc., the Supreme Court held that municipalities are immune from punitive damages under § 1983.  453 U.S. 247, 271 (1981).  Defendant Clayton County is therefore immune from punitive damages as to Plaintiff's Monell claim, brought under § 1983.  Defendant Clayton County's Motion to Dismiss Plaintiff's claim for punitive damages is **GRANTED**.

Because the Court held that Plaintiff's § 1983 claim against Defendant Clayton County should proceed, her claim for damages and fees may proceed, too. As such, Defendant Clayton County's Motion to Dismiss Plaintiff's claims for attorney's fees and compensatory damages is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant Tillman's Motion to Dismiss [Doc. 50] is **DENIED**.  Defendant Clayton County's Motion to Dismiss [Doc. 53] is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claim for punitive damages against Defendant Clayton County only is **DISMISSED**.

**SO ORDERED** this 7th day of March, 2022.

**J. P. BOULEE**
United States District Judge